1

**E-Filed 7/16/2007**

2

3

4

5

6

7

8

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

9

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

**SAN JOSE DIVISION**

11

12

In re DITECH NETWORKS, INC. DERIVATIVE
LITIGATION

Case Number C 06-5157 JF

13

14

ORDER[1] GRANTING MOTION TO
DISMISS FOR FAILURE TO STATE
A CLAIM UPON WHICH RELIEF
CAN BE GRANTED WITH LEAVE
TO AMEND; DEFERRING MOTION
TO DISMISS FOR FAILURE TO
MAKE DEMAND

15

16

17

[re: docket nos. 35, 38]

18

19

20

**I. BACKGROUND**

21

**1.      Procedural Background**

22

        This derivative action arises from the alleged backdating and springloading of stock

23

options by directors and officers of nominal defendant Ditech Networks, Inc. ("Ditech" or "the

24

Company").  Plaintiff Donald W. Newman filed the initial complaint on August 23, 2006.  The

25

Court has consolidated the Newman action and two other actions under the caption of the instant

26

27

        [1] This disposition is not designated for publication and may not be cited.

28

case.  On March 2, 2007, Plaintiffs filed an amended consolidated complaint ("the Complaint").

The Complaint asserts claims against the following individuals ("the Individual Defendants").

| Defendant | Role at the Company |
|---|---|
| Timothy K. Montgomery | President, CEO, and director, September 1998 to present. Chairman of the Board of Directors ("the Board"), October 1999 to present. Senior Vice President of Sales and Marketing, November 1997 to September 1998. |
| Gregory M. Avis | Director, February 1997 to present. Member, Compensation Committee, 1999 to present. |
| William A. Hasler | Director, May 1997 to present. Member, Compensation Committee, at least 1999 to present. Member, Audit Committee, at least 1999 to present. |
| Andrei M. Manoliu | Director, June 2000 to present. Member, Audit Committee, 2003 to present. |
| Edwin L. Harper | Director, December 2002 to present. |
| David M. Sugishita | Director, February 2003 to present. Member, Audit Committee, 2003 to present; Chair of Audit Committee, 2004 to present. |
| Serge Stepanoff | Vice President of Engineering & Development for Echo Cancellation Products, September 1996 to May 2002. |
| William J. Tamblyn | Chief Financial Officer, June 1997 to present. Executive Vice President, May 2005 to present. Vice President, June 1997 to May 2005. |
| Toni M. Bellin | Vice President of Operations, December 1998 to July 2001. |
| Robert T. DeVincenzi | Senior Vice President of Sales for Altamar Networks, July 2000 to June 2003. |
| Lowell B. Transgrud | Vice President, Operations, July 2001 to present. |
| James H. Grady | Vice President, Business Development, 2005 to present. Vice President, Worldwide Sales, July 2003 to 2005. |
| Lee H. House | Vice President, Echo Engineering, May 2002 to present. |
| Ian M. Wright | Senior Vice President of Engineering for Optical Networking Products, February 2000 to present. |
| Chalan M. Aras | Vice President of Marketing, May 2004 to present. Senior Director of Product Management, October 2003 to May 2004. |

Case No. C 06-5157 JF
ORDER GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN
BE GRANTED WITH LEAVE TO AMEND; DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE
DEMAND
(JFLC1)

1  Complaint ¶¶ 14-30.  The Complaint describes Montgomery, Stepanoff, Tamblyn, Bellin,

2  DeVincenzi, Transgrud, Grady, House, Wright, and Aras as "the Officer Defendants;" Avis and

3  Hasler as "the Committee Defendants;" and Montgomery, Tamblyn, Transgrud, House, Avis,

4  Hasler, Manoliu, Sugishita, and Grady as "the Insider Selling Defendants."  Complaint ¶¶ 24, 27.

5   The Complaint asserts nine claims: (1) violation of Section 10(b) of the Securities

6  Exchange Act and Rule 10b-5 promulgated thereunder, against the Individual Defendants; (2)

7  violation of Section 14(a) of the Securities Exchange Act and Rule 14a-9 promulgated

8  thereunder, against the Individual Defendants; (3) violation of Section 20(a) of the Securities

9  Exchange Act, against defendants Montgomery, Tamblyn, Avis, Hasler, Sugishita, Harper, and

10  Manoliu; (4) accounting, against the Individual Defendants; (5) breach of fiduciary duty and/or

11  aiding and abetting, against the Individual Defendants; (6) unjust enrichment, against the

12  Individual Defendants; (7) rescission, against the Officer Defendants; (8) insider selling and

13  misappropriation of information, against the Insider Selling Defendants; and (9) breach of

14  fiduciary duty and/or aiding and abetting relating to the May 18, 2004 option grants, against the

15  Individual Defendants.

16   On April 2, 2007, the Individual Defendants moved to dismiss the Complaint for failure

17  to state a claim upon which relief can be granted ("Motion One"), and Ditech moved to dismiss

18  the Complaint for failure to make demand ("Motion Two").  Plaintiffs oppose both motions.  The

19  Court heard oral argument on June 8, 2007.

20  **2. Allegations Made in the Complaint**

21   Pursuant to the Company's shareholder-approved stock option plans, the exercise price of

22  options may not be less than the fair market value of the stock on the date the option is granted.

23  Complaint ¶ 38.  However, the Complaint alleges that

24    [t]he Compensation Committee, with the knowledge and approval of the other
  members of the Board, knowingly and deliberately violated the terms of the

25    [Company's stock option] Plans . . . by knowingly and deliberately backdating
  grants of stock options to make it appear as though the grants were made on dates

26    when the market price of Ditech stock was lower than the market price on the
  actual grant dates, thereby benefitting the recipients of the backdated options.

27

28              3

Complaint ¶ 37; *see also* Complaint ¶ 46.  Nine stock option grants allegedly were backdated:

| Purported Date | Recipient | Number of Options | Exercise Price |
| --- | --- | --- | --- |
| 8/10/1999 | Montgomery | 253,888 | $9.00 |
| 8/10/1999 | Stepanoff | 125,020 | $9.00 |
| 8/10/1999 | Tamblyn | 149,586 | $9.00 |
| 10/4/1999 | Bellin | 50,000 | $24.69 |
| 8/1/2000 | DeVincenzi | 133,934 | $22.50 |
| 1/10/2001 | Montgomery | 400,000 | $7.19 |
| 1/10/2001 | DeVincenzi | 160,000 | $7.19 |
| 1/10/2001 | Tamblyn | 145,000 | $7.19 |
| 1/10/2001 | Wright | 300,000 | $7.19 |

Complaint ¶ 41.[2]  The grants dated August 10, 1999 coincided with the second-lowest quarterly price, those dated October 4, 1999 and August 1, 2000 coincided with the lowest price of their respective months, and those dated January 10, 2001 coincided with the second-lowest price of the six-month period ending on April 30, 2001.  Complaint ¶¶ 43-45.[3]

Defendants allegedly engaged in option springloading in 2004.  This is a practice "when directors grant options at the market value on the date of grant, at a time the directors know that the shares are actually worth more than the market value because the directors possess material non-public information."  Complaint ¶ 48.  Three springloaded stock option grants allegedly were made on May 18, 2004.

| Purported Date | Recipient | Number of Options | Exercise Price |
| --- | --- | --- | --- |
| 5/18/04 | Tamblyn | 125,000 | $13.37 |

---

[2]  Two further alleged backdated grants were made on July 6, 2000, but were cancelled on March 19, 2003.  Complaint ¶ 41 n.3.

[3]  The Complaint includes no allegations regarding the actual date of the option grants, of any public announcement by the Company of options backdating or the need to restate earnings, or of any investigation by the Company or by the SEC.

Case No. C 06-5157 JF
ORDER GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN
BE GRANTED WITH LEAVE TO AMEND; DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE
DEMAND
(JFLC1)

| 5/18/04 | Transgrud | 125,000 | $13.37 |
| 5/18/04 | Aras | 100,000 | $13.37 |

Complaint ¶ 49.  The grant price coincided with the third lowest price of 2004.  *Id.*  The Company announced positive results on May 27, 2004, and Ditech shares closed at $20.61 per share on May 28, 2004.  Complaint ¶ 51.

As alleged in the Complaint, two proxy statements, filed on August 18, 2000 and August 8, 2001, respectively, falsely reported the backdated option grants.  Complaint ¶ 61.  Defendants also are alleged to have disseminated false financial reports, Complaint ¶¶ 54-61, concealed their misconduct, Complaint ¶¶ 62-63, and violated GAAP accounting principles, SEC regulations, and IRS rules and regulations.  Complaint ¶¶ 64-86.   During the period from October 5, 1999 to December 9, 2004, the Individual Selling Defendants are alleged to have sold over $100 million in Ditech stock while in the possession of materially adverse non-public information regarding the backdating of stock options.  Complaint ¶ 87.  These alleged actions of the Individual Defendants constituted breaches of their fiduciary duties and were not, and could not have been, products of the exercise of good faith business judgment.  Complaint ¶¶ 88-89.

Plaintiffs claim that they have not made a demand on the Board because "demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action."  Complaint ¶ 94.  At the time that this action was commenced, the Board consisted of six directors: Montgomery, Avis, Hasler, Manoliu, Sugishita, and Harper.  Complaint ¶ 95.  According to Plaintiffs, five directors are incapable of considering independently and disinterestedly a demand to commence and prosecute this action vigorously.  *Id.*  The reasons for each director's alleged incapacity to do so are summarized in the table below:

| Director | Reasons for Lack of Independence and Disinterestedness |
| --- | --- |
| Montgomery | • Received backdated stock options.<br>• Sold Ditech stock for proceeds in excess of $39 million on the basis of inside information. |

5

| | |
|---|---|
| Avis | • Sold Ditech stock for proceeds in excess of $43 million on the basis of inside information.<br>• Knowingly and deliberately backdated stock option grants as a member of the Compensation Committee, and is substantially likely to be held liable for breaching his fiduciary duties.<br>• Colluded with the Officer Defendants, demonstrating that he is unable or unwilling to act independently.<br>• Has served as Managing Partner of Summit, a venture capital and private firm, since 1990.  Summit invested in Ditech in 1997 and is still listed as a Summit portfolio company. |
| Hasler | • Sold Ditech stock for proceeds in excess of $4.4 million on the basis of inside information.<br>• Knowingly and deliberately backdated stock option grants and approved, signed, and disseminated false financial statements and other false SEC filings as a member of the Audit and Compensation Committees, and is substantially likely to be held liable for breaching his fiduciary duties.<br>• Colluded with the Officer Defendants, demonstrating that he is unable or unwilling to act independently. |
| Manoliu | • Sold Ditech stock for proceeds in excess of $441,000 on the basis of inside information.<br>• Knowingly and deliberately approved, signed, and disseminated false financial statements and other false SEC filings as a member of the Audit Committee, and is substantially likely to be held likely for breaching his fiduciary duties.<br>• Colluded with the Officer Defendants, demonstrating that he is unable or unwilling to act independently. |
| Sugishita | • Sold Ditech stock for proceeds in excess of $516,000 on the basis of inside information.<br>• Knowingly and deliberately approved, signed, and disseminated false financial statements and other false SEC filings as a member and Chair of the Audit Committee, and is substantially likely to be held liable for breaching his fiduciary duty.<br>• Colluded with the Officer Defendants, demonstrating that he is unable or unwilling to act independently. |

*Id.*

## II.  LEGAL STANDARD

**1.     Motion to Dismiss**

For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the

Court must construe the complaint in the light most favorable to the plaintiff.  *Jenkins v.*

*McKeithen*, 395 U.S. 411, 421 (1969).  However, the court is not required "to accept legal

conclusions case in the form of factual allegations if those conclusions cannot reasonably be

6

1    drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.

2    1994).  Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot

3    be cured by amendment.  *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995).

4    When amendment would be futile, however, dismissal may be ordered with prejudice.  *Dumas v.*

5    *Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).  Leave to amend is to be granted with extreme liberality

6    in securities fraud cases, because the heightened pleading requirements imposed by the PSLRA

7    are so difficult to meet.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th

8    Cir. 2003).

9         On a motion to dismiss, the Court's review is limited to the face of the complaint and

10   matters judicially noticeable.  *North Star International v. Arizona Corporation Commission*, 720

11   F.2d 578, 581 (9th Cir. 1983); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.

12   1986); *Beliveau v. Caras*, 873 F.Supp. 1393, 1395 (C.D. Cal. 1995).  However, under the

13   "incorporation by reference" doctrine, the Court also may consider documents that are referenced

14   extensively in the complaint and are accepted by all parties as authentic, even though the

15   documents are not physically attached to the complaint.  *In re Silicon Graphics, Inc. Securities*

16   *Litigation*, 183 F.3d 970 (9th Cir. 1999).

17   **2.      The Demand Requirement**

18        A derivative complaint must "allege with particularity the efforts, if any, made by the

19   plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and,

20   if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to

21   obtain the action or for not making the effort."  Fed. R. Civ. P. 23.1.  The existence and

22   satisfaction of a demand requirement is a substantive issue governed by state law.  *See Kamen v.*

23   *Kemper Financial Services, Inc.*, 500 U.S. 90, 96-97 (1991).[4]  When the challenged decision is

24   that of the board in place at the time of the filing of the complaint, failure to make demand may

25

26

27        [4]  The parties agree that Delaware law applies to the instant action because Ditech is
     incorporated in Delaware.

28                                                    7

1  be excused if a plaintiff can raise a reason to doubt that a majority of the board is disinterested or

2  independent or that the challenged acts were the product of the board's valid exercise of business

3  judgment. *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984); *see also Ryan v. Gifford*, 918 A.2d

4  341, 352 (Del. Ch. 2007) (discussing *Aronson*).  However, "[w]here there is no conscious

5  decision by the corporate board of directors to act or refrain from acting, the business judgment

6  rule has no application." *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993); *see also Ryan*, 918

7  A.2d at 352 (discussing *Rales*).  In such a situation, demand may be excused only if a plaintiff

8  "can create a reasonable doubt that, as of the time the complaint is filed, the board of directors

9  could have properly exercised its independent and disinterested business judgment in responding

10  to a demand." *Id.* at 353 (citing *Rales*, 634 A.3d 933-34).

11  **III.  DISCUSSION**

12  **1.     Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted**

13         a.     Claim One: Violation of Section 10(b) and Rule 10b-5

14                i.       Sufficiency of the Allegations

15         Plaintiffs allege securities fraud in violation of Section 10(b) of the Securities Exchange

16  Act and Rule 10b-5 promulgated thereunder.  Complaint ¶ 99.  Plaintiffs summarize their claim

17  as follows:

18         Plaintiffs allege that (1) Defendants committed a variety of manipulative and
       deceptive acts, including backdating stock option grants and producing and
19       disseminating false financial statements, false proxy statements, and false Form
       4s, ¶¶ 54-63; (2) Defendants' misconduct was in furtherance of their scheme to
20       defraud the Company, ¶¶ 88-90, 98-103; (3) Defendants engaged in their
       fraudulent scheme knowingly and deliberately, i.e., with scienter, ¶¶ 54-59, 61-63;
21       and (4) the Company relied on Defendants' fraud in granting the Officer
       Defendants options to purchase Ditech common stock, ¶¶ 37-38, 41, 46-49-53.

22

23  Opposition to Motion One 18.[5]

24         Section 10(b) makes it unlawful

25         [t]o use or employ, in connection with the purchase or sale of any security
       registered on a national securities exchange or any security not so registered . . .
26

27         ⁵ Plaintiffs do not assert that springloading supports liability under the federal claims.

28                                                        8

1    any manipulative or deceptive device or contrivance in contravention of such rules
2    and regulations as the Commission may prescribe as necessary or appropriate in
     the public interest or for the protection of investors.

3    15 U.S.C. § 78j(b). Rule 10b-5 makes it unlawful for any person to use interstate commerce

4    (a) To employ any device, scheme, or artifice to defraud,
5    (b) To make any untrue statement of a material fact or to omit to state a material
     fact necessary in order to make the statements made, in the light of the
     circumstances under which they were made, not misleading, or
6    (c) To engage in any act, practice, or course of business which operates or would
     operate as a fraud or deceit upon any person, in connection with the purchase or
7    sale of any security.

8    17 C.F.R. § 240.10b-5. In cases involving publicly-traded securities and purchases or sales in

9    public securities markets, the elements of an action under Section 10(b) and Rule 10b-5 are: (1)

10   a material misrepresentation or omission, (2) scienter, (3) a connection with the purchase or sale

11   of a security, (4) reliance, (5) economic loss, and (6) loss causation. *Dura Pharmaceuticals, Inc.*

12   *v. Broudo*, 544 U.S. 336, 341-42 (2005).

13          Plaintiffs must meet two heightened pleading standards. Fed. R. Civ. P. 9(b) requires that

14   "the circumstances constituting fraud . . . be stated with particularity." The Ninth Circuit has

15   explained that a "plaintiff must include statements regarding the time, place, and nature of the

16   alleged fraudulent activities, and that mere conclusory allegations of fraud are insufficient." *In*

17   *re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994). A plaintiff asserting

18   fraud "must set forth an explanation as to why the statement or omission complained of was false

19   or misleading." *Id.* (internal quotation marks omitted); *see also Yourish v. California Amplifier*,

20   191 F.3d 983, 992-93 (9th Cir. 1999). The Private Securities Litigation Reform Act ("PSLRA")

21   raises the pleading standard further:

22   (1) Misleading statements and omissions
     In any private action arising under this chapter in which the plaintiff alleges that
23   the defendant–
     (A) made an untrue statement of a material fact; or
24   (B) omitted to state a material fact necessary in order to make the statements
     made, in the light of the circumstances in which they were made, not misleading;
25   the complaint shall specify each statement alleged to have been misleading, the
     reason or reasons why the statement is misleading, and, if an allegation regarding
26   the statement or omission is made on information and belief, the complaint shall
     state with particularity all facts on which that belief is formed.

27

28                                                9

     Case No. C 06-5157 JF
     ORDER GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN
     BE GRANTED WITH LEAVE TO AMEND; DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE
     DEMAND
     (JFLC1)

1
2
3
4

(2) Required state of mind
In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

5    15 U.S.C. § 78u-4b(1)-(2).

6        Plaintiffs assert that they "undeniably plead all of the elements necessary to state a claim

7    for "scheme liability."  The Court disagrees.  The Complaint alleges a very limited number of

8    facts that pertain to a subset of the defendants, but then attempts to impose liability on all the

9    Individual Defendants.  In addition to this global deficiency, at least two major inadequacies

10   require dismissal.[6]

11       First, Plaintiffs assert that their claim is for violation of Rule 10b-5(a) and (c), not for

12   violation of Rule 10b-5(b), which pertains to material untrue statements or omissions.  *Id.*  This

13   assertion is confusing given Plaintiffs' emphasis on the alleged production and dissemination of

14   false financial statements, proxy statements, and Form 4's.  In light of this ambiguity, while

15   Plaintiffs may have stated with particularity some portion of the supposed universe of

16   Defendants' fraudulent conduct, the extent of this alleged fraudulent conduct remains unclear.

17   Not only must Plaintiffs give Defendants notice of what acts constitute the alleged violations,

18   but, as discussed below, the nature of the violation is relevant to the statute of limitations

19   analysis.  Accordingly, Plaintiffs may not proceed with this claim as presently stated.

20       Second, the Complaint fails to allege scienter sufficiently.  The Complaint alleges no

21   *facts* that give rise to a strong inference that the non-director defendants knew that the options

22   they received were backdated or that the directors who joined after the final alleged backdated

23   grant participated in the backdating scheme.  Even the participation and knowledge of the

24

25       [6] In dismissing this claim on these grounds, the Court expresses no opinion as to other
26   argued grounds for dismissal forwarded by the Individual Defendants, such as the sufficiency of
     the pleading of damage to Ditech or causation.  Nor does the Court deem it necessary to discuss
27   arguments it does not reach as to the other claims.

28                                        10

1  remaining members of the board during the time of the options grants is pled without factual

2  particularity.  Instead, the Complaint alleges generically that the Compensation Committee acted

3  "with the knowledge and approval of the other members of the Board."  Complaint ¶¶ 37, 40, 42.

4  The high rank of various Defendants within the Company is insufficient, without more, to

5  impose liability, and the conclusory allegation that each individual defendant had knowledge or

6  acted with reckless disregard of the truth is insufficient to state a claim even under the more

7  liberal Rule 12(b)(6) standard.  *See e.g. Assoc. Gen. Contractors, Inc. v. Metro. Water Dist. of*

8  *So. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998); *see also Bell Atlantic v. Twombly*, 127 S.Ct. 1955,

9  1964-65 (May 21, 2007) (explaining that a plaintiff's obligation to state the ground for relief

10  "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

11  of action will not do") (citations omitted).

12      Other courts within this district have considered the presence or absence of a pattern of

13  backdating, primarily in the context of the demand futility requirement.  *See e.g. In re CNET*

14  *Networks, Inc. Deriv. Litig.*, 483 F.Supp.2d 947 (N.D.Cal. 2007); *In re Zoran Corp. Deriv. Litig.*,

15  2007 WL 1650948 (N.D.Cal. June 5, 2007); *In re Openwave Systems Inc. Deriv. Litig.*, 2007 WL

16  1456039 (N.D.Cal., May 17, 2007); *In re Linear Tech. Corp. Deriv. Litig.*, 2006 WL 3533024

17  (N.D.Cal. Dec. 7, 2006).  As currently pled, the Complaint alleges fraudulent conduct by labeling

18  various grants as backdated and describing them as having been made at low points within

19  certain defined periods.  *See e.g.* Complaint ¶¶ 37, 42-46.  While counsel for Plaintiffs

20  represented at oral argument that the statistical likelihood of the options having been granted

21  properly is very low, that theory is not alleged in the Complaint or in a document that the Court

22  may consider on this motion.  Even assuming that the *factual* allegations of the Complaint are

23  true, many explanations other than options backdating exist for the coincidence of the grants and

24  a low share price.[7]  The following factual detail likely would strengthen the Complaint: the

25  _____

26      [7]  The Court does not hold that a plaintiff must allege a pattern of backdating in order to
    state a claim under Section 10(b), to establish demand futility, or to state a claim for breach of
27  fiduciary duty.  *See CNET*, 483 F.Supp.2d at 956-58 (describing analytical methods as one way

28                                      11

degree to which the options were granted at the discretion of the compensation committee or the board, versus at fixed, preestablished times; the actual grant dates of the options and the appropriate price of the options; the date that the options were exercised; whether required performance goals were met before the options were granted; the presence or absence of other major corporate events, such as an acquisition, at the time of the grants; and the results of any requests by Plaintiff for information.

ii.    Statute of Limitations

[A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of –
(1) 2 years after the discovery of the facts constituting the violation; or
(2) 5 years after such violation.

28 U.S.C. § 1658(b); *see e.g. In re Heritage Bond Litig.*, 289 F.Supp.2d 1132, 1147-48 (C.D.Cal. 2003).  This statute of limitations is not subject to equitable tolling.  *Durning v. Citibank, In'l*, 990 F.2d 1133, 1136-37 (9th Cir. 1993).  Claim one, asserting a violation of Section 10(b) and Rule 10b-5 of the Securities Exchange Act, alleges and involves fraud.  *See* Complaint ¶ 99. Accordingly, Section 1658 applies to this claim.  Because the practice of backdating options came to light in 2005, the Court concludes that the two-year discovery period does not bar the instant action.  Accordingly, the applicable period for this analysis is the five-year period of repose.[8]

---

to support an inference of illegal conduct when "direct evidence is rare and difficult to uncover"). For example, a plaintiff likely could proceed past the pleading stage by alleging sufficient factual detail as to the mechanics of an option backdating scheme, including the specific roles and mental states of the various participants.  In such a case, the fact that the defendants only backdated one option grant or did not grant themselves the largest possible benefit (and thus failed to generate a statistically implausible pattern) would not be an automatic bar to liability.

   [8] "A statute of repose is a fixed, statutory cutoff date, usually independent of any variable, such as claimant's awareness of a violation."  *Munoz v. Ashcroft*, 339 F.3d 950, 957 (9th Cir. 2003) (citing *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991)).

Case No. C 06-5157 JF
ORDER GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED WITH LEAVE TO AMEND; DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE DEMAND (JFLC1)

1   In light of the statute's focus on the "violation," the Court first must decide what
2   comprises the alleged violation.  The primary focus of the claim appears to be on the backdating
3   of options.[9]  To the extent that the claim is based upon the backdating itself, the period of repose
4   starts on the date that the option grant was made.  *See Durning*, 990 F.2d at 1136 (noting that the
5   federal rule is that a cause of action accrues at the completion of the sale of the instrument);
6   *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1130 (9th Cir. 2002) (describing the grant of an
7   option as "a purchase or sale" under the Securities Litigation Uniform Standards Act).  The last
8   alleged purported date of a backdated option is January 10, 2001.  This option was reported in a
9   proxy statement filed with the SEC on August 8, 2001, so even though the actual date of the
10  options grant is not alleged, it could not have been granted after that date.  Because the initial
11  complaint was filed on August 23, 2006, any improper transaction under Section 10(b) must have
12  occurred after August 23, 2001.  Accordingly, this claim is time-barred to the extent that it is
13  based upon the actual backdated grants.

14   Plaintiffs also appear to suggest that the Individual Defendants violated Section 10(b) by
15  disseminating false financial statements.  However, as noted above, Plaintiffs state in opposition
16  to the instant motion that they do not assert a claim under Rule 10b-5(b), which makes it
17  unlawful to make an untrue statement or to omit a material fact.  Opposition to Motion One 18.
18  Consequently, it is by no means clear how the alleged fraudulent financial statements fit into the
19  first claim.  Plaintiffs have not pled them as an independent violation of Section 10(b); indeed,
20  they appear to acknowledge their failure to do so by disclaiming any need to plead the elements
21  of a violation of Rule 10b-5(b).  *See* Opposition to Motion One 18.  While Plaintiffs refer to a
22  fraudulent scheme in the Complaint, *see e.g.* Complaint ¶¶ 2-4, they do not allege such a scheme
23  with any particularity and, as noted above, fail to allege with any factual detail the involvement
24  of a large number of the Individual Defendants.  In light of these inadequacies, the Court

25

26   _____

27   [9]  Plaintiffs do not argue that option springloading would support a claim under the
    federal securities laws.

28                                          13

1    concludes that it is premature to rule out the possibility that Plaintiffs will be able to plead a

2    violation of Section 10(b) based upon fraudulent financial statements that is not time-barred.  In

3    reaching this conclusion, the Court notes the Individual Defendants' argument that the period of

4    repose starts when the misrepresentation is made for the first time.  At least one court in this

5    district has accepted this argument, *see Zoran*, 2007 WL 1650948 *21(citing *Asdar Group v.*

6    *Pillsbury, Madison, and Sutro*, 99 F.3d 289, 294-95 (9th Cir.1996) ("[A] statute of limitations

7    [for a Section 10(b) claim] ordinarily begins to run when an act occurs that gives rise to liability .

8    . . .")).[10]  As it indicated at oral argument, the Court is highly skeptical of a continuing wrong

9    theory[11] that would allow the revival of a time-barred claim under Section 10(b) upon the

10   issuance of a further financial statement that failed to correct the prior false statement.  Such a

11   theory appears to approximate the effects of the fraudulent concealment doctrine of equitable

12   tolling, a doctrine that does not apply in the Section 10(b) context.

13                          iii.    Leave to Amend

14         Counsel for Plaintiffs represented at oral argument that he believed that Plaintiffs could

15   allege further facts that would allow them to address both the time-bar and the current lack of

16   particularity in the Complaint.  Accordingly, this claim will be dismissed with leave to amend.

17         b.       Claim Two: Violation of Section 14(a)

18

19         [10]  The court explained in *In re Dynex Capital, Inc. Sec. Litig.*, 2006 WL 314524 *5
20   (S.D.N.Y. Feb 10, 2006) that while it concluded that a series of misrepresentations were not
     barred by the period of repose when the alleged securities transaction fell within the five-year
21   period, it had held in a previous case that a claim was time-barred when the underlying securities
     transaction fell outside the five-year period.  *Dynex*, 2006 WL 314524 at n.4 (citing *Shalam v.*
22   *KPMG, L.L.P.*, 2005 WL 2139928 *2 (S.D.N.Y. Sept. 6, 2005)).  Thus, even if *Dynex* were
     binding authority, which it is not, it would not necessarily dictate the outcome suggested by
23   Plaintiffs.

24

25         [11]  Any such theory would be distinct from the continuing wrong exception, recognized by
     other courts, *see e.g. Bateson v. Magna Oil Corp.*, 414 F.2d 128, 130 (5th Cir. 1969), to the
26   continuous ownership requirement of Rule 23.1 that allows standing to maintain a claim for an
     entire course of a continuing wrong even if a portion of those events occurred prior to the
27   plaintiff's acquisition of stock in the nominal defendant.

28                                         14
     Case No. C 06-5157 JF
     ORDER GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN
     BE GRANTED WITH LEAVE TO AMEND; DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE
     DEMAND
     (JFLC1)

1    Rule 14a-9 provides:

2    No solicitation subject to this regulation shall be made by means of any proxy
     statement, form of proxy, notice of meeting or other communication, written or
3    oral, containing any statement which, at the time and in the light of the
     circumstances under which it is made, is false or misleading with respect to any
4    material fact, or which omits to state any material fact necessary in order to make
     the statements therein not false or misleading or necessary to correct any
5    statement in any earlier communication with respect to the solicitation of a proxy
     for the same meeting or subject matter which has become false or misleading.

6

7    17 C.F.R. § 240.14a-9(a).  To state a claim under Rule 14a-9 and Section 14(a), a plaintiff must

8    allege a false or misleading statement or omission of material fact; that the misstatement or

9    omission was made with the requisite level of culpability; and that it was an essential link in the

10   accomplishment of the transaction.  *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir.

11   2000).

12        The Individual Defendants argue that the extended limitations period under 28 U.S.C. §

13   1658 does not apply to actions under Section 14(a), and that a Section 14(a) claim must be filed

14   one year after discovery of the facts constituting the violation, and in no event more than three

15   years following publication of the false statement.  Individual Defendants' Motion 8 (citing *In re*

16   *Exxon Mobil Corp. Sec. Litig.*, 387 F.Supp.2d 407, 424 (D.N.J. 2005); *In re Global Crossing,*

17   *Ltd. Sec. Litig.*, 313 F.Supp.2d 189, 196-97 (S.D.N.Y. 2003).  Plaintiffs do not respond to this

18   argument, and the Court concludes that it should apply the one/three-year limitations period.

19   *Accord Zoran*, 2007 WL 1650948 * 24.  The last proxy statement containing an allegedly false

20   statement was filed on August 8, 2001, Complaint ¶ 61, and the initial complaint was filed on

21   August 23, 2006.  Plaintiffs provide no specific argument explaining why the Section 14(a) claim

22   is not time-barred, but they appear to imply that it survives under a continuing wrong theory.

23   However, nothing is pled that would support such a theory, as even the part of the fraudulent

24   scheme pled with respect to that claim apparently ends in 2001, outside the three-year period of

25   repose.  *See* Complaint ¶ 106.  Moreover, it is unclear how false statements in financial filings

26   other than proxy statements (such as Form 4's) could revive a claim under Section 14(a), which

27   pertains to proxy statements.  Accordingly, the Court concludes that claim two is time-barred as

28                                                    15

1    currently pled and should be dismissed with leave to amend.

2    　　　　The Individual Defendants also argue that Plaintiffs fail to allege which Defendants made

3    the false statements, specific facts that support a strong inference of negligence, and specific facts

4    supporting causation.  The Court does not reach the Individual Defendants' challenges to the

5    sufficiency of the allegations, but notes that, assuming without deciding that the PSLRA also

6    applies to Section 14(a) claims, *see e.g. In re Textainer Partnership Securities Litig.*, 2005 WL

7    3801596 (N.D.Cal. March 8, 2005), *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F.Supp.2d

8    1248, 1267 (N.D.Cal. 2000), greater specificity likely would strengthen this claim considerably.[12]

9    　　　　c.　　　Claim Three: Violation of Section 20(a)

10    　　　　To state a claim under Section 20(a), a plaintiff must allege (1) a primary violation of

11    federal securities laws; and (2) that the defendant exercised actual power or control over the

12    primary violator.  *Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  As

13    discussed above, Plaintiffs have failed to state a claim for a primary violation of the securities

14    laws.  The statute of limitations analysis pertaining to the Section 10(b) claim applies equally to

15    the Section 20(a) claim.  *See e.g. In re Heritage Bond Litigation*, 289 F.Supp.2d at 1148.

16    Accordingly, this claim also will be dismissed with leave to amend.

17    　　　　d.　　　Claims Four to Nine: Violations of Delaware Law

18    　　　　　　　i.　　　Statute of Limitations

19    　　　　The parties agree that a three-year statute of limitations applies to the claims asserted

20    under Delaware law.  Plaintiffs argue that the running of this period was tolled because the injury

21    was inherently unknowable, because the defendants engaged in fraudulent concealment, and

22

23    　　　　[12] This Court has held in another action that the PSLRA has foreclosed the application of
24    the "group published pleading" doctrine, which provides that when false or misleading
information is conveyed in group published statements, it is reasonable to presume that the
25    statements are the result of the collective actions of the company's officers.  *In re Nextcard, Inc.
Sec. Litig.*, 2006 WL 708663 *2-3 (N.D.Cal. March 20, 2006).  Since it is not clear to what
26    extent the first claim is based upon false statements made by the defendants, *see* Opposition to
Motion One 18, that holding may not be relevant to the first claim.  However, it likely will be
27    relevant to the sufficiency of any amended claim under Section 14(a).

28
Case No. C 06-5157 JF
ORDER GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN
BE GRANTED WITH LEAVE TO AMEND; DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE
DEMAND
(JFLC1)

1    because Plaintiffs relied on the competence and good faith of a fiduciary.  "[P]laintiffs bear the

2    burden of pleading specific facts to demonstrate that the statute of limitations was, in fact,

3    tolled."  *In re Dean Witter P'Ship Litig.*, 1998 WL 442456 *6 (Del. Ch. July 17, 1998).  The

4    Complaint alleges that the Individual Defendants colluded with one another to "conceal[] the

5    improper backdating of stock options."  Complaint ¶ 6(d); *see also* Complaint ¶¶ 57, 114, 120.  It

6    also identifies the signatories to seven Form 10-K filings that disseminated false financial

7    statements.  Complaint ¶ 55.  Under Delaware law, if a plaintiff "alleges that defendants

8    intentionally falsified public disclosures, defendants may not rely on the statute of limitations as

9    a defense until plaintiff is placed on inquiry notice that such filings were fraudulent."  *Ryan*, 918

10   A.2d at 360.  The Court concludes that Plaintiffs have pled intentional falsification of proxy

11   statements and other public disclosures sufficiently to toll the statue of limitations under the

12   fraudulent concealment doctrine.  The Individual Defendants do not argue that the claims would

13   be time-barred even if the statute of limitations was tolled until the Plaintiffs were put on inquiry

14   notice.  Accordingly, the Court concludes that the state law claims are not time-barred.

15              ii.      Sufficiency of the Claims

16                     (1)      Claims Four and Seven: Accounting and Rescission

17          The Individual Defendants argue that the fourth and seventh claims in the Complaint

18   should be included as remedies, not as independent claims.  Plaintiffs do not respond to this

19   argument in their opposition.  The Court agrees with Defendants that Plaintiffs should include

20   accounting and rescission as remedies in any amended complaint.

21                     (2)      Claim Five: Breach of Fiduciary Duty

22          As discussed above, the Complaint contains no factual allegations as to the knowledge of

23   the options recipients and instead makes only conclusory allegations that do not satisfy Rule

24   12(b)(6).  While the PSLRA does not apply to this claim or the other claims under Delaware law,

25   because the options backdating sounds in fraud, *see* Complaint ¶ 99, Plaintiffs also must plead

26   the circumstances of the fraud with particularity.  Fed. R. Civ. P. 9(b); *Atlantis Plastic Corp. v.*

27   *Sammons*, 558 A.2d 1062, 1066 (Del. Ch. 1989) (stating same rule under Delaware law).

28                                                      17

1  Plaintiffs fail to do so.  Accordingly, this claim will be dismissed with leave to amend.

2                    (3)      Claim Six: Unjust Enrichment

3         The Individual Defendants argue that the Complaint fails to state a claim for unjust

4  enrichment because Plaintiffs fail to allege that other adequate remedies are not provided by law

5  or that the options recipients were enriched unjustly.  Individual Defendants' Motion 25.

6  Plaintiffs do not respond to these arguments in their opposition.  Plaintiffs asserted the validity of

7  this claim at oral argument, however, and at least one Delaware case suggests that option

8  backdating will support a claim for unjust enrichment.  *Ryan*, 918 A.2d at 361.  Accordingly,

9  while the Court concludes that the unjust enrichment claim should be dismissed, leave to amend

10 will be granted.

11                   (4)      Claim Eight: Insider Selling

12        The Complaint alleges that the Insider Selling Defendants breached their fiduciary duties

13 of loyalty and good faith by selling stock when in possession of material, non-public information.

14 Complaint ¶¶ 115-18.  To determine the sufficiency of insider selling allegations, Delaware

15 courts look to whether a complaint contains "particularized facts providing an inference of

16 insider trading."  *Guttman v. Huang*, 823 A.2d 492, 503 (Del.Ch. 2003).  The Complaint alleges

17 that the Insider Selling Defendants sold a certain amount of shares for a certain amount of

18 "proceeds garnered" within a range of dates.  Complaint ¶ 87.  For example, it alleges that

19 Montgomery sold 1,163,200 shares between the dates of October 5, 1999 and December 16,

20 2004, for proceeds garnered of $39,188,259.  *Id.*  It does not identify the date or amount of

21 individual transactions; instead, it provides only aggregate totals by defendant.  Accordingly, the

22 Complaint fails to allege particularized facts sufficient to state a claim for insider selling.  The

23 eighth claim will be dismissed with leave to amend.[13]

24

25        [13] Plaintiffs do not respond to the Individual Defendants' argument that the Complaint
26 fails to state a claim for insider selling due to the lack of such specificity and appear to have
    abandoned this claim.  However, in light of the statements made by counsel for Plaintiffs and the
27 grant of leave to amend the rest of the Complaint, leave to amend is also appropriate as to this

28                                              18

1             (5)    Claim Nine: Breach of Fiduciary Duty by Options Springloading

2          The Complaint alleges that the Individual Defendants "breached their fiduciary duties by .

3    . . engaging in a scheme to grant spring-loaded stock options to themselves and/or certain other

4    officers and directors of the Company and cover up their misconduct."  Complaint ¶ 122.[14]  The

5    Complaint alleges that Tamblyn, Transgrud, and Aras received springloaded options on May 18,

6    2004.  Complaint ¶ 49.  The Complaint also alleges that "the Individual Defendants agreed to and

7    did participate with and/or aided and abetted one another in a deliberate cause of action designed

8    to divert corporate assets to themselves and/or other Company insiders."  Complaint ¶ 123.[15]

9    However, the Complaint does not allege which defendants authorized the grants, approved the

10   grants, or intended or had knowledge that the grants were springloaded.  Nor does the Complaint

11   allege the specific material information that had not been made public previously.  As is the case

12   with the fifth claim, because the springloading claim sounds in fraud, *see* Complaint ¶ 128

13   (describing stock option grants in the relevant period as obtained by fraud), Plaintiffs must plead

14   the circumstances of the fraud with particularity.  Fed. R. Civ. P. 9(b); *see also Atlantis Plastics*

15   _____

16   claim.

17       [14]  The Complaint repeats certain paragraph numbers.  This cite refers to the paragraph

18   bearing this number that appears under the heading "Count IX," not that which appears under the

19   heading "Count V."

20       [15]  In a portion of a recent decision concluding that plaintiffs had failed to allege sufficient

     facts to establish demand futility, the Delaware Court of Chancery observed that a "spineless

21   'and/or' is a telling concession that [plaintiff] cannot cross even the minimal Rule 11 threshold."

     Order Dismissing Complaint 51, *Desimone v. Barrows*, Case No. 2210-VCS (Del. Ch., June 7,

22   2007).  While not directly applicable to the instant motion, this reference to Rule 11 bears notice

23   as it reminds Plaintiffs that any amended complaint must be based upon appropriate

     investigation.

24       While the Court appreciates the efforts of counsel for each side to bring to its attention

     new cases in this rapidly developing area of law, it concludes that it should defer a detailed

25   discussion of *Desimone*.  Its distinction of *In re Tyson Foods*, 919 A.2d 563, 593 (Del.Ch. 2007)

26   and its discussion of demand futility likely will provide guidance to the Court in subsequent

     motion practice.  However, the Complaint's lack of detail makes a similar analysis premature in

27   the instant action.

28                                         19

1   *Corp.*, 558 A.2d at 1066 (stating same rule under Delaware law).  Plaintiffs fail to do so here.

2   While it is not clear that Plaintiff will be able to state a claim for breach of fiduciary duty by

3   identifying only one allegedly improper grant date, the law in this area is still developing and the

4   Delaware Chancery has permitted at least one claim for breach of the duty of loyalty and good

5   faith to proceed on a springloading theory.  *See In re Tyson Foods*, 919 A.2d 563, 593 (Del.Ch.

6   2007).  Accordingly, the claim will be dismissed with leave to amend.

7   **2.      Motion to Dismiss for Failure to Make Demand**

8               a.      Standing Under Rule 23.1

9               Ditech argues that Plaintiffs lack standing because they allege only that they have held

10  stock in Ditech at all relevant periods.  *See* Complaint ¶¶ 10-12.  Ditech cites a number of non-

11  binding cases from other districts in support of this proposition.  Because the Court will dismiss

12  the Complaint with leave to amend on other grounds, it need not decide the appropriate level of

13  detail in the pleading of share ownership.  Nonetheless, it recommends that Plaintiffs amend this

14  aspect of the Complaint.

15              b.      Disinterestedness and Independence

16              Ditech argues that Plaintiffs have failed to allege sufficient facts to raise a reasonable

17  doubt as to the disinterestedness and independence of a majority of the present Board.  Ditech

18  concedes that Montgomery is not independent or impartial, and Plaintiffs do not argue that

19  Harper cannot act independently or impartially.  Accordingly, the question as to the

20  independence and disinterestedness of the Board revolves around four members: Avis, Hasler,

21  Manoliu, and Sugishita.  Hasler and Avis were on the Board during the entire period of alleged

22  backdating.  Complaint ¶¶ 25-26.  Manoliu joined the Board prior to the final alleged backdated

23  grant.  Complaint ¶ 28.  Sugishita joined the Board prior to the alleged springloaded grant.

24  Complaint ¶ 29.  Ditech points out that the Company's policy that the compensation committee

25  makes option grant decisions would limit the challenged decisions to a subset of the existing

26  Board.  Motion Two 22.  However, Plaintiffs allege that this policy was not followed in multiple

27  respects and that, while the Compensation Committee backdated the grants, the other members

28

Case No. C 06-5157 JF
ORDER GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN
BE GRANTED WITH LEAVE TO AMEND; DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE
DEMAND
(JFLC1)

1   of the Board had knowledge and approved of the backdating.  Complaint ¶ 37.  Accordingly,

2   assuming that an amended complaint alleges with sufficient particularity that each of these

3   directors approved the option grants or otherwise participated in wrongful conduct, Plaintiffs

4   may be able to plead demand futility on the basis of an insufficient number of disinterested and

5   independent directors.  However, the Court concludes that it is premature to make such a

6   determination because Plaintiffs have failed to allege with sufficient particularity that any options

7   backdating or other actionable misconduct occurred at Ditech.

8                     c.      The Business Judgment Rule

9        Ditech argues that the second prong of the *Aronson* demand futility test, which inquires

10  whether a plaintiff can identify a reason to doubt that the challenged acts were the product of the

11  board's valid exercise of business judgment, does not apply because the "board that would be

12  considering the demand did not make a business decision which is being challenged in the

13  derivative suit." *Rales*, 634 A.2d at 933-34.  As discussed above, the threshold question is the

14  role of the members of the board when the Complaint was filed.  "Where at least one half or

15  more of the board in place at the time the complaint was filed approved the underlying

16  challenged transactions, which approval may be imputed to the entire board for purposes of

17  proving demand futility, the *Aronson* test applies." *Ryan*, 918 A.2d at 353.  As with the

18  disinterestedness and independence inquiry, assuming that Plaintiffs can amend to add sufficient

19  particularity, it appears possible that this aspect of the *Aronson* test applies to some or all of the

20  surviving claims.  However, the Court also concludes that it is premature to determine the

21  presence or absence of a valid business judgment behind the decision to engage in the alleged

22  misconduct.

23                              **IV.  ORDER**

24       Good cause therefor appearing, IT IS HEREBY ORDERED that the motion to dismiss

25  for failure to state a claim upon which relief can be granted is GRANTED WITH LEAVE TO

26  AMEND and the motion to dismiss for failure to make demand is DEFERRED.  Any amended

27  complaint shall be filed within thirty days of the date of this order.

28

Case No. C 06-5157 JF
ORDER GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN
BE GRANTED WITH LEAVE TO AMEND; DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE
DEMAND
(JFLC1)

1    DATED: July 16, 2007

2

3                                              _____

4                                              JEREMY FOGEL
                                               United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        22

1   This Order has been served upon the following persons:

2   Lawrence Timothy Fisher          ltfisher@bramsonplutzik.com, moldenburg@bramsonplutzik.com

3   Alan R Plutzik                   aplutzik@bramsonplutzik.com

4   Diane E. Pritchard               dpritchard@mofo.com, mbenedict@mofo.com,
                                     blevine@mofo.com
5
    Darryl P. Rains                  drains@mofo.com, dgillis@mofo.com
6
    Kathryn A. Schofield             kschofield@bramsonplutzik.com,
7                                    moldenburg@bramsonplutzik.com

8   Emanuel Shachmurove              mshachmurove@sbtklaw.com

9   Shawn A. Williams                shawnw@lerachlaw.com, e_file_sd@lerachlaw.com;
                                     e_file_sf@lerachlaw.com; aelishb@lerachlaw.com;
10                                   moniquew@lerachlaw.com; travisd@lerachlaw.com;
                                     cwood@lerachlaw.com; jdavis@lerachlaw.com
11
    Eric L. Zagar                    ezagar@sbtklaw.com, rwinchester@sbtklaw.com;
12                                   der_filings@sbtklaw.com; kpopovich@sbtklaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 06-5157 JF
ORDER GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN
BE GRANTED WITH LEAVE TO AMEND; DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE
DEMAND
(JFLC1)