**E-Filed 03/26/2008**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| In re DITECH NETWORKS, INC. DERIVATIVE LITIGATION | Case Number C 06-5157 JF |
| | ORDER[1] GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED; GRANTING IN PART WITH LEAVE TO AMEND AND DEFERRING IN PART MOTION TO DISMISS FOR FAILURE TO COMPLY WITH RULE 23.1 |
| | [re: docket nos. 71, 74] |

## I. BACKGROUND

**1.      Procedural Background**

This derivative action arises from the alleged backdating and springloading of stock options by directors and officers of nominal defendant Ditech Networks, Inc. ("Ditech" or "the Company").  Plaintiff Donald W. Newman filed the initial complaint on August 23, 2006.  The Court has consolidated the Newman action and two other actions under the above caption.  On

---

[1] This disposition is not designated for publication and may not be cited.

1  March 2, 2007, Plaintiffs filed an amended consolidated complaint ("the Complaint").  That

2  complaint was dismissed without prejudice on July 16, 2007.  *In re Ditech Networks, Inc. Deriv.*

3  *Litig.*, No. C 06-5157 JF, 2007 WL 2070300 (N.D. Cal. July 16, 2007).  Plaintiffs filed the

4  operative second amended complaint ("SAC") on September 18, 2007.   The SAC asserts claims

5  against the following individuals ("the Individual Defendants"):

| Defendant | Role in the Company |
|---|---|
| Timothy K. Montgomery | President, CEO, and director, September 1998 to present.<br>Chairman of the Board of Directors ("the Board"), October 1999 to present.<br>Senior Vice President of Sales and Marketing, November 1997 to September 1998. |
| Gregory M. Avis | Director, February 1997 to present.<br>Member, Compensation Committee, 1999 to present. |
| William A. Hasler | Director, May 1997 to present.<br>Member, Compensation Committee, at least 1999 to present.<br>Member, Audit Committee, at least 1999 to present. |
| Andrei M. Manoliu | Director, June 2000 to present.<br>Member, Audit Committee, 2003 to present. |
| Edwin L. Harper | Director, December 2002 to present. |
| David M. Sugishita | Director, February 2003 to present.<br>Member, Audit Committee, 2003 to present; Chair of Audit Committee, 2004 to present. |
| Serge Stepanoff | Vice President of Engineering & Development for Echo Cancellation Products, September 1996 to May 2002. |
| William J. Tamblyn | Chief Financial Officer, June 1997 to present.<br>Executive Vice President, May 2005 to present.<br>Vice President, June 1997 to May 2005. |
| Toni M. Bellin | Vice President of Operations, December 1998 to July 2001. |
| Robert T. DeVincenzi | Senior Vice President of Sales for Altamar Networks, July 2000 to June 2003. |
| Ian M. Wright | Senior Vice President of Engineering for Optical Networking Products, February 2000 to present. |
| Chalan M. Aras | Vice President of Marketing, May 2004 to present.<br>Senior Director of Product Management, October 2003 to May 2004. |
| Lowell B. Trangsrud | Vice President, Operations since July 2000 |

As alleged in the SAC, for each of the four allegedly backdated option grants, Ditech's

2

compensation committee consisted of Defendants Hasler and Avis.  By 2004, when the one springloaded grant allegedly was made, a third independent director, Defendant Harper, had joined the compensation committee.  Defendants Manoliu, Sugishita, and before 2004, Harper, are not accused of backdating options but are accused of having approved SEC filings, which allegedly made false or misleading statements regarding Ditech's procedures for granting options.  The remaining eight defendants are alleged to have received at least one backdated or springloaded grant.

The SAC asserts five claims Delaware law**:** (1) breach of fiduciary duty and/or aiding and abetting, against the Individual Defendants; (2) unjust enrichment, against Defendants Montgomery, Stepanoff, Tamblyn, Bellin, DeVincenzi, Transgrud, Wright, and Aras ;(3) breach of fiduciary duty and/or aiding and abetting relating to the backdated option grants, against Defendants Avis and Hasler; (4) breach of fiduciary duty and/or aiding and abetting relating to the May 18, 2004 option grants, against Defendants Avis, Hasler and Harper; and (5) breach of fiduciary duty for making false and misleading statements against and/or aiding and abetting relating to the May 18, 2004 option grants, against Defendants Avis, Hasler and Manoliu.

On November 30, 2007, the Individual Defendants moved to dismiss the SAC for failure to state a claim upon which relief can be granted, and Ditech moved to dismiss the Complaint for failure to make demand.  Plaintiffs oppose both motions.  The Court heard oral argument on February 8, 2008.

**2.   Allegations of the SAC**

Pursuant to the Company's shareholder-approved stock option plans, the exercise price of options may not be less than the fair market value of the stock on the date the option is granted. SAC at ¶ 34.  However, the SAC alleges that

> The Compensation Committee, of which Defendants Avis and Hasler were members, had the sole authority to choose the dates, and in fact, did choose the dates on which the stock options were granted.  Avis and Hasler approved each grant on a date after the reported grant date and knowingly used hindsight to pick a date when Ditech's stock was at a quaterly or monthly low.  Avis and Hasler knew that the Plan required them to use the Fair Market Value on the actual grant date and knew that backdating to a date with a lower price violated the Plan. Notwithstanding the clear requirements of the Plan, Defendants Avis and Hasler purported to grant stock options to Defendants Montgomery, Stepanoff and

3

Tamblyn on August 10, 1999 and Defendant Bellin on October 4, 1999.  Avis and Hasler's backdating was particularly egregious because on August 10, 1999 and October 4, 1999 grant were backdated to coincide with the second-lowest quarterly and lowest monthly prices . . . .

SAC at ¶ 41.  Plaintiffs allege that the following is a complete list of all options granted by the Compensation Committee to Defendants Montgomery, Stepanoff, Tamblyn, Bellin, DeVincenzi, and Wright from 1999 to January 2001:

| Purported Date | Recipient | Number of Options | Exercise Price |
|---|---|---|---|
| 8/10/1999 | Montgomery | 253,888 | $9.00 |
| 8/10/1999 | Stepanoff | 125,020 | $9.00 |
| 8/10/1999 | Tamblyn | 149,586 | $9.00 |
| 10/4/1999 | Bellin | 50,000 | $24.69 |
| ~~7/06/00~~ | ~~Montgomery~~ | ~~232,000~~ | ~~$79.50~~[2] |
| ~~7/06/00~~ | ~~Tamblyn~~ | ~~40,000~~ | ~~$79.50~~[3] |
| 8/1/2000 | DeVincenzi | 133,934 | $22.50 |
| 1/10/2001 | Montgomery | 400,000 | $7.19 |
| 1/10/2001 | DeVincenzi | 160,000 | $7.19 |
| 1/10/2001 | Tamblyn | 145,000 | $7.19 |
| 1/10/2001 | Wright | 300,000 | $7.19 |

SAC at ¶ 39.  Plaintiffs allege that with the exception of the July 6, 2000 grants, which subsequently were canceled, each of the aforementioned grant dates coincided with the lowest or second-lowest closing price of Ditech stock in the month and/or quarter of the purported grant. The SAC provides an analysis of the probability that such dates could have been selected at random:

---

[2] The July 6, 2000 grants to Montgomery and Tamblyn were subsequently cancelled on March 19, 2003.  On September 23, 2003, Ditech granted Montgomery and Tamblyn replacement option grants covering 25% of the number of shares subject to the cancelled options with a exercise price of $10.35 per share.  Thus, under the repricing, Montgomery received option grants covering 58,000 shares and Tamblyn received option grants covering 10,000 shares with an exercise prices of $10.35 per share.  SAC at ¶ 38 n.11.

[3] *See* n.2 above.

Case No. C 06-5157 JF
ORDER RE MOTION TO DISMISS ETC.
(JFLC3)

| Date | |
|------|--|
| 8/10/99 | Second lowest price in fiscal quarter. <br><br> 3.3% probability date was selected at random. |
| 10/04/99 | Lowest monthly price. <br><br> 5% probability date was selected at random. |
| 8/10/00 | Lowest monthly price. <br><br> 5% probability date was selected at random. |
| 1/10/01 | Second lowest price in two fiscal quarters <br><br> 1.7% probability date was selected at random. |

SAC at ¶¶ 39-46.  The SAC also includes an analysis by Merrill Lynch in support of its

inference that Defendants Avis and Hasler backdated the grants in question:

| Calendar Year | Management 20-Day Return | Management Annualized Return | Investor Annualized Return | Management Excess Return |
|---------------|--------------------------|------------------------------|----------------------------|--------------------------|
| 1999 | 181% | 3,264% | 648% | 2,616% |
| 2000 | 51% | 911% | -66% | 977% |
| 2001 | 18% | 318% | -63% | 380% |
| Average | 83% | 1,498% | 173% | 1,324% |

SAC at ¶ 48.

Defendants also allegedly engaged in option springloading on May 18, 2004.

"Springloading takes place when a stock option is granted at a time when the grantor(s) know

that the shares are actually worth more than the market value because the grantor(s) possess

material non-public information that would impact the company's share price."  SAC at ¶ 50.

Three springloaded stock option grants allegedly were made on May 18, 2004.

| Purported Date | Recipient | Number of Options | Exercise Price |
|----------------|-----------|-------------------|----------------|
| 5/18/04 | Tamblyn | 125,000 | $13.37 |
| 5/18/04 | Trangsrud | 125,000 | $13.37 |
| 5/18/04 | Aras | 100,000 | $13.37 |

5

Case No. C 06-5157 JF
ORDER RE MOTION TO DISMISS ETC.
(JFLC3)

SAC at ¶ 49-56.  The grant price coincided with the third lowest price of 2004.  *Id.*  The Company announced positive results on May 27, 2004, and Ditech shares closed at $20.61 per share on May 28, 2004.  *Id.*

As alleged in the SAC, the May 18, 2004 option grants were made when defendants Avis, Hasler and Harper knew that Ditech shares actually were worth more than their market value because they possessed material non-public information that would impact [Ditech's] share price. SAC at ¶ 50-56.  As disclosed in the 2005 Proxy, the May 18, 2004 grant date was the only date on which any of Ditech's executeve officers Defendants Montgomery, Stepanoff, Tamblyn, Belin, DeVincenzi, and Wright received option grants in the fiscal year ending April 30, 2005, and that date corresponded with Ditech's third lowest annual closing price.  SAC at ¶¶ 49-56. When Ditech publicly announced is earnings, seven trading days after May 18, 2004, the news drove Ditech's stock price up nearly 30%, and the trading volume was apparently sixteen time greater than in the preceding days.  SAC at ¶ 53.

Plaintiffs claim that they have not made a demand on the Board because "demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action."  SAC ¶ 102.  At the time this action was commenced, the Board consisted of six directors: Montgomery, Avis, Hasler, Manoliu, Sugishita, and Harper.  SAC ¶ 103.  According to Plaintiffs, five directors are incapable of considering independently and disinterestedly a demand to commence and prosecute this action vigorously. *Id.*  The reasons for each director's alleged incapacity to do so are summarized in the table below:

| Director | Reasons for Lack of Independence and Disinterestedness |
|---|---|
| Montgomery | • Received backdated stock options.<br>• Sold Ditech stock for proceeds in excess of $39 million on the basis of inside information. |

| Avis | • Sold Ditech stock for proceeds in excess of $43 million on the basis of inside information.<br>• Knowingly and deliberately backdated stock option grants as a member of the Compensation Committee, and is substantially likely to be held liable for breaching his fiduciary duties.<br>• Colluded with the Officer Defendants, demonstrating that he is unable or unwilling to act independently.<br>• Has served as Managing Partner of Summit, a venture capital and private firm, since 1990.  Summit invested in Ditech in 1997 and is still listed as a Summit portfolio company. |
|------|---|
| Hasler | • Sold Ditech stock for proceeds in excess of $4.4 million on the basis of inside information.<br>• Knowingly and deliberately backdated stock option grants and approved, signed, and disseminated false financial statements and other false SEC filings as a member of the Audit and Compensation Committees, and is substantially likely to be held liable for breaching his fiduciary duties.<br>• Colluded with the Officer Defendants, demonstrating that he is unable or unwilling to act independently. |
| Manoliu | • Sold Ditech stock for proceeds in excess of $441,000 on the basis of inside information.<br>• Knowingly and deliberately approved, signed, and disseminated false financial statements and other false SEC filings as a member of the Audit Committee, and is substantially likely to be held likely for breaching his fiduciary duties.<br>• Colluded with the Officer Defendants, demonstrating that he is unable or unwilling to act independently. |
| Sugishita | • Sold Ditech stock for proceeds in excess of $516,000 on the basis of inside information.<br>• Knowingly and deliberately approved, signed, and disseminated false financial statements and other false SEC filings as a member and Chair of the Audit Committee, and is substantially likely to be held liable for breaching his fiduciary duty.<br>• Colluded with the Officer Defendants, demonstrating that he is unable or unwilling to act independently. |

*Id.*

## II.  LEGAL STANDARD

**1.     Motion to Dismiss**

For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the Court must construe the complaint in the light most favorable to the plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  However, the court is not required "to accept legal conclusions case in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.

7

1  1994).  Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot

2  be cured by amendment.  *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995).

3  When amendment would be futile, however, dismissal may be ordered with prejudice.  *Dumas v.*

4  *Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).  Leave to amend is to be granted with extreme liberality

5  in securities fraud cases, because the heightened pleading requirements imposed by the PSLRA

6  are so difficult to meet.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th

7  Cir. 2003).

8       On a motion to dismiss, the Court's review is limited to the face of the complaint and

9  matters judicially noticeable.  *North Star International v. Arizona Corporation Commission*, 720

10 F.2d 578, 581 (9th Cir. 1983); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.

11 1986); *Beliveau v. Caras*, 873 F.Supp. 1393, 1395 (C.D. Cal. 1995).  However, under the

12 "incorporation by reference" doctrine, the Court also may consider documents that are referenced

13 extensively in the complaint and are accepted by all parties as authentic, even though the

14 documents are not physically attached to the complaint.  *In re Silicon Graphics, Inc. Securities*

15 *Litigation*, 183 F.3d 970 (9th Cir. 1999).

16 **2.    The Demand Requirement**

17      A shareholder derivative complaint must "allege with particularity the efforts, if any,

18 made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable

19 authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's

20 failure to obtain the action or for not making the effort."  Fed. R. Civ. P. 23.1.  The existence and

21 satisfaction of a demand requirement is a substantive issue governed by state law.  *See Kamen v.*

22 *Kemper Financial Services, Inc.*, 500 U.S. 90, 96-97 (1991).[4]  When the challenged decision is

23 that of the board in place at the time of the filing of the complaint, failure to make demand may

24 be excused if a plaintiff can raise a reason to doubt that a majority of the board is disinterested or

25 independent or that the challenged acts were the product of the board's valid exercise of business

26

27

28       [4] The parties agree that Delaware law applies to the instant action because Ditech is
incorporated in Delaware.

8

1   judgment.  *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984); *see also Ryan v. Gifford*, 918 A.2d

2   341, 352 (Del. Ch. 2007) (discussing *Aronson*).  However, "[w]here there is no conscious

3   decision by the corporate board of directors to act or refrain from acting, the business judgment

4   rule has no application."  *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993); *see also Ryan*, 918

5   A.2d at 352 (discussing *Rales*).  In such a situation, demand may be excused only if a plaintiff

6   "can create a reasonable doubt that, as of the time the complaint is filed, the board of directors

7   could have properly exercised its independent and disinterested business judgment in responding

8   to a demand."  *Id.* at 353 (citing *Rales*, 634 A.3d 933-34).

9                          **III.  DISCUSSION**

10  **1.     Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted**

11         a.      Rule 9(b)

12         Defendants argue that, even though Plaintiffs no longer assert a section 10(b) claim,

13  Plaintiffs still must comply with Rule 9(b)'s heightened pleading standards because the SAC

14  "sounds in fraud."  Plaintiffs argue that the breach of fiduciary duty claims are sufficiently pled

15  under Rule 8(a) and that Rule 9(b) does not apply to these claims.

16         In *Vess v. Ciba-Geigy, Corp., USA*, 317 F.3d 1097, 1103-05 (9th Cir. 2003), the Ninth

17  Circuit stated that "[i]t is established law, in this circuit and elsewhere, that Rule 9(b)'s

18  particularity requirement applies to state-law causes of action."  In *Vess*, the Plaintiff argued that

19  Rule 9(b) did not apply to the case because the state statutory claims he asserted did not require a

20  showing of fraud.  *Id.* at 1103.  However, Rule 9(b) is not limited to complaints that allege fraud

21  as such.  Instead, 9(b) applies whenever a complaint alleges facts that "necessarily constituted

22  fraud."  *Vess v. Ciba-Geigy Corp.*, USA 317, F.3d 1097, 1103-05 (9th Cir. 2003).  "[I]n a case

23  where fraud is not an essential element of a claim, only allegations ("averments") of fraudulent

24  conduct must satisfy the heightened pleading requirement of Rule 9(b).  Allegations of non-

25  fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)."  *Id.* at

26  1105.

27         Here, the SAC describes a unified course of allegedly fraudulent conduct, which is

28  characterized as "a secret scheme to grant undisclosed, in-the-money stock options to themselves

                                        9

1    and others by backdating stock option grants." SAC at ¶ 2. While Plaintiffs have removed the

2    securities fraud claims from their complaint and have replaced them with state law claims

3    including claims for breach of fiduciary duty, the underlying allegations are the same. Plaintiffs

4    claim that Defendants breached their fiduciary duty by unduly benefitting Company insiders at the

5    expense of the Company through grants of backdated or springloaded stock options. *Vess* is clear

6    that Rule 9(b) applies to such allegations. Accordingly, Rule 9(b)'s heightened pleading standard

7    applies to the entire SAC.

8              b.    Plaintiffs' Allegations of Backdating and Springloading

9              Turning to the issue of whether Plaintiffs have alleged circumstances from which the court

10   reasonably may infer backdating or springloading, Plaintiffs argue that the SAC contains enough

11   information to allow the Court to draw the reasonable inference that Ditech backdated its stock

12   option grants to the individual Defendants.

13              1.   Statistical Pattern

14             Plaintiffs allege that the SAC contains all of the discretionary options granted by the

15   Compensation Committee to the Defendants from 1999 to 2001 (the "Backdating Period").

16   During the Backdating Period, the Compensation Committee granted to the individual Defendants

17   options only on five discrete grant dates. Plaintiffs allege that four of the five option grant dates

18   during the Backdating Period were selected with the benefit of hindsight, as each was granted at a

19   low point of Ditech's stock price. Plaintiffs cite to *In re Zoran,* 511 F.Supp.2d 986, 1004 (N.D.

20   Cal. 2007), in which the court found a "striking" pattern where seven of thirty stock option grants

21   fell on the date with the lowest option price in the calendar month. Plaintiffs argue that if seven

22   of thirty constitutes a "striking" pattern, then four of five also must be strong evidence of

23   backdating. Plaintiffs acknowledge that the grants to the Defendants were discretionary and made

24   sporadically rather than according to a pre-set schedule.

25             Defendants contend that these allegations do not show a statistically implausible pattern.

26   They argue that Plaintiffs' "pattern" actually reflects an arbitrary selection of four of seventy-one

27   grants made by Ditech between the date of its initial public offering and the date Plaintiffs filed

28   their initial complaint. Defendants assert that "Plaintiffs' focus on just five Ditech officers, to the

1   exclusion of many other senior executives and section 16 officers, necessarily introduced bias into

2   the analysis." Reply 7:20-23.  Defendants suggest that Plaintiffs' analysis of a period of only

3   eighteen months cannot be justified by any change in Ditech personnel, events in the market, or

4   change in applicable law.

5          Plaintiffs respond that they have included every stock option grant given to the named

6   Defendants from 1999 through January 2001, and that the Individual Defendants were chosen not

7   to skew the statistical analysis but rather because these individuals' grants are the only grants

8   disclosed as required by law in the Company's annual proxy statements.  However, while

9   Plaintiffs explain why these particular Defendants were chosen, it is still not clear why the

10  particular time period was chosen and whether the Individual Defendants were granted other

11  options outside the time period.  Plaintiffs assert only that the SAC lists each and every option

12  grant to the Defendants from 1999 through January 2001.  Arguably, this failure to plead any facts

13  as to when other options were granted outside the time period selected by the Plaintiffs is a form

14  of statistical gerrymandering.  *See In re Linear Tech. Corp. Deriv. Litig.*, 2006 WL 3533024, at *3

15  (N.D. Cal. Dec. 7, 2006).  Because Plaintiffs' statistical analysis is incomplete, Defendants'

16  motion to dismiss the backdating allegations will be granted, with leave to amend.

17                  2.      Merrill Lynch Analysis

18         As noted above, the SAC also includes an analysis by Merrill Lynch.  Plaintiffs allege that

19  the results of this analysis show that the annualized average return on stock options granted to

20  Defendants from 1999 to 2001 was 1,498%, compared to average investor annualized return of

21  173%. SAC at ¶ 48.  Defendants again argue that the relevance and probative value of the Merrill

22  Lynch analysis depends on the selection of the grants to be analyzed and the time period covered

23  by the analysis.  Accordingly, for the reasons stated above, this claim will also be dismissed with

24  leave to amend.

25                  3.      Springloading

26         Plaintiff allege that the grant made on May 18, 2004 was springloaded because Ditech

27  shares actually were worth more than their market value and the Compensation Committee

28  possessed material non-public information impacting the Company's share price.  According to

                                                11

1   Plaintiffs, Ditech's stock price "soared 29.5%" when Ditech announced its quarterly earnings

2   shortly after the grant was made.  SAC at ¶ 53.  Defendants argue that such conclusory

3   allegations–a grant was made, good news later was announced, the directors knew of the good

4   news when they made the grant–do not meet the heightened pleading requirements of Rule 9(b).

5   Plaintiffs' earlier complaint was dismissed because it did not allege which Defendants authorized

6   the grants, approved the grants, or had knowledge that the grants were springloaded, nor did it

7   allege the specific material information that had not been made public previously. The Court

8   observed that while "it is not clear that Plaintiff will be able to state a claim for breach of fiduciary

9   duty by identifying only one allegedly improper grant date, the law in this area is still developing

10  and the Delaware Chancery Court has permitted at least one claim for breach of the duty of loyalty

11  and good faith to proceed on a springloading theory.  *See In re Tyson Foods*, 919 A.2d 563, 593

12  (Del. Ch. 2007)."  July 17, 2007 Order.  In *Tyson Foods*, the court found that plaintiffs properly

13  had pled a claim of springloading where defendants granted options at $13.33 per share on

14  September 19, 2003, and four days later Tyson publicly announced that earnings would exceed

15  expectations, propelling the sale price to $14.25.

16      Defendants argue that *Tyson Foods* is distinguishable.  They contend that in that case, the

17  directors intentionally used inside knowledge in order to enrich employees while avoiding

18  shareholder-imposed requirements.  The shareholder-imposed requirements were set out in the

19  company's stock option plan and provided that options could be only used to encourage future

20  performance by executives.  Allegedly, the directors secretly violated that restriction by using

21  material, non-public information to issue options with the intent to circumvent the otherwise valid

22  shareholder approved restrictions.  Defendants argue that Plaintiffs do not allege any of the facts

23  that were material to the decision in *Tyson Foods.*

24      Recently in *Desimone v. Barros*, 924 A.2d 916, 946 (Del. Ch. 2007), the Delaware

25  Chancery Court held that a springloading claim must be supported by specific facts showing the

26  directors possessed material non-public information, harbored an illicit intent to enrich the

27  recipients at the expense of the shareholders, and chose to subvert the purposes of the company's

28  shareholder-approved stock option plan.  *Desimone* requires that the non-public information must

12

1    be sufficiently important that it is likely have "a substantial effect on the stock's trading price

2    months later when the first of the options vested." *Id.* at 946.  Further, the company's stock

3    performance must be presented on a market-adjusted basis, so that the company's stock price

4    "swings" can be "correlated" to "overall market movements."  The *Desimone* court also noted the

5    problem with alleging just one springloaded grant:

6              [B]y contrast to the allegations in *Tyson*, where the complaint pled a multi-year
             pattern of extraordinary options grants to key insiders-including members of the
7             board-just before the release of clearly material, market-moving positive
             information, the complaint here contains weak allegations about a single alleged
8             instance of spring loading.
     *Id.*

9          This Court finds the reasoning of *Desimone* persuasive.  The SAC contains no factual

10   allegations as to the knowledge of the options recipients and instead makes only conclusory

11   allegations.  Because Plaintiffs' allegations of options springloading sound in fraud, Plaintiffs

12   must plead with particularity.  Fed. R. Civ. P. 9(b); *Atlantis Plastic Corp. v. Sammons*, 558 A.2d

13   1062, 1066 (Del. Ch. 1989) (stating same rule under Delaware law).  Accordingly, this claim will

14   be dismissed with leave to amend.

15                   4.      Allegations Against the Individual Defendants

16          In its  previous order, the Court noted that the complaint "alleged a very limited number of

17   facts that pertain to a subset of the defendants, but then attempts to impose liability on all the

18   Individual Defendants."  7/16/2007 Order, pg. 10.  The SAC alleges that Defendants Avis, Hasler,

19   and Harper are liable because they "approved" allegedly backdated or springloaded options; (2)

20   Defendants Montgomery, Tamblyn, Avis, Hasler, and Manoliu are liable because the signed

21   DITECH's SEC filing; and (3) all of the other Defendants are liable because they "received"

22   allegedly backdated or springloaded options.

23          In *Desimone*, the court noted that "Desimone has not pled facts suggesting an inference

24   that the Sycamore board knowingly granted Sycamore's officer backdated options. *Desimone*,

25   924 A.2d at 942.  *See also In re Verisign, Inc., Deriv Litig.*, 2007 WL 2705221, *30 (N.D. Cal.

26   Sept. 14, 2007) (plaintiffs did not plead "a single fact showing what each defendant knew, when

27   he/she knew it, or how he/she acquired that knowledge.").  Here, Plaintiffs have not alleged any

28

                                            13

1  prior knowledge on the part of the individual Defendants, and accordingly, the claims against
2  them will be dismissed with leave to amend.

3              4.      Claim Six: Unjust Enrichment

4          The Individual Defendants argue that the Complaint fails to state a claim for unjust
5  enrichment because Plaintiffs have not alleged that other adequate remedies are not provided by
6  law or that the options recipients were enriched unjustly.  The Court agrees.  Plaintiffs have not
7  pled specific facts showing that the value of the Individual Defendants' work was less than the
8  value of the options they received. Accordingly, the unjust enrichment claim will be dismissed,
9  with leave to amend.

10  **2.      Motion to Dismiss for Failure to Make Demand**

11          a.      Standing Under Rule 23.1

12         Defendants claim that Plaintiffs lack standing to sue regarding all of the allegedly
13  backdated grants.  Under Fed. R. Civ. Pro. 23.1, a shareholder suing derivatively must allege he
14  or she owned stock "at the time the transaction of which [the shareholder] complains." Fed. R.
15  Civ. P. 23.1(b)(1).   Delaware law also requires a shareholder bringing a derivative suit to have
16  been a shareholder at the time of the transaction.  8 Del. C. § 327.  "The strict interpretation of the
17  rules serves to prevent strike suits and to ensure that a derivative plaintiff truly acts in the
18  corporation's best interest."  *In re MIPS Tech., Inc*., 2008 WL 131915, *5 (N.D. Cal. 2008) *citing*
19  *Conrad v. Blank*, 940 A.2d 28, *41 (Del. Ch. Sept. 7, 2007) (holding that plaintiff lacked standing
20  to challenge stock option grants predating her ownership of the corporation's stock).

21         The Delaware Chancery Court has applied this rule in options backdating cases.  In *Ryan*
22  *v. Gifford*, 918 A.2d 341, 358-59 (Del. Ch. 2007), the court held that a plaintiff could not assert
23  any claims arising before his ownership interest materialized on the date he acquired stock by
24  virtue of a merger.  Similarly, in *Desimone,* 924 A.2d at 924-27, all claims predating plaintiff's
25  ownership were also dismissed.

26         In the instant case, the four purported backdated grants were made on August 10, 1999,
27  October 4, 1999, August 1, 2000, and January 10, 2001.  The allegedly springloaded stock grant
28  was made on May 18, 2004.  Defendants contend that three Plaintiffs—Newman, McKenna, and

                                            14

Lau—did not own Ditech stock at the time of any of the challenged grants was made.  Indeed, Newman and McKenna allege that they first purchased Ditech stock in March, 2005.  SAC at ¶¶ 10-11.  Lau also alleges that he first bought Ditech Stock in 2005.  SAC at ¶12.  Plaintiffs do allege that one named Plaintiff, Lieberman, purchased Ditech stock on January 12, 2001.  SAC at ¶ 13.  Plaintiffs argue that Lieberman also should be permitted to assert claims arising from the January 10, 2001 grant, because the facts suggest a reasonable inference that the actual grant was made some time after January 12, 2001.  Defendants argue that Lieberman has no basis for asserting standing to challenge the January 10, 2001 grant under Delaware law.

Section 327 makes ownership at the time of the challenged conduct as a prerequisite to maintaining a derivative action.  The primary purpose of section 327 is to prevent plaintiffs from buying stock in order to maintain a derivative suit.  Thus, in the instant case, if the backdating occurred when Lieberman owned his stock, his interest in the company has been harmed by the alleged backdating when he was a shareholder.  However, Plaintiffs do not allege specifically that Lieberman owned stock when the alleged backdating occurred, and at this point their suggestion as to the actual date of such occurrence is speculative.  Accordingly, based on their current allegations, Plaintiffs have standing to pursue only those claims related to the May 18, 2004 springloaded grant.

b.      Disinterestedness and Independence

In its order of July 16, 2007, the Court stated that Plaintiffs likely could meet the demand futility requirement provided the amended complaint alleged with sufficient particularity that each of the directors approved the option grants or otherwise participated in wrongful conduct. Assuming that they can add sufficient particularity to their pleadings, it appears Plaintiffs can meet the demand requirement.

1

**IV.  ORDER**

2       Good cause therefor appearing, IT IS HEREBY ORDERED that the motion to dismiss for

3  failure to state a claim upon which relief can be granted is GRANTED WITH LEAVE TO

4  AMEND, and the motion to dismiss for failure to comply with Rule 23.1 is GRANTED WITH

5  LEAVE TO AMEND as to standing and DEFERRED as to Plaintiffs' failure to make demand.

6  Any amended complaint shall be filed within thirty days of the date of this order.

7

8

9  DATED: March 26, 2008

10

11                                   _____
                                         JEREMY FOGEL
12                                       United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 06-5157 JF
ORDER RE MOTION TO DISMISS ETC.
(JFLC3)

This Order has been served upon the following persons:

Lawrence Timothy Fisher    ltfisher@bramsonplutzik.com, moldenburg@bramsonplutzik.com

Alan R Plutzik    aplutzik@bramsonplutzik.com

Diane E. Pritchard    dpritchard@mofo.com, mbenedict@mofo.com, blevine@mofo.com

Darryl P. Rains    drains@mofo.com, dgillis@mofo.com

Kathryn A. Schofield    kschofield@bramsonplutzik.com,
moldenburg@bramsonplutzik.com

Emanuel Shachmurove    mshachmurove@sbtklaw.com

Shawn A. Williams    shawnw@lerachlaw.com, e_file_sd@lerachlaw.com;
e_file_sf@lerachlaw.com; aelishb@lerachlaw.com;
moniquew@lerachlaw.com; travisd@lerachlaw.com;
cwood@lerachlaw.com; jdavis@lerachlaw.com

Eric L. Zagar    ezagar@sbtklaw.com, rwinchester@sbtklaw.com;
der_filings@sbtklaw.com; kpopovich@sbtklaw.com

17

Case No. C 06-5157 JF
ORDER RE MOTION TO DISMISS ETC.
(JFLC3)